# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ' | |
| | ' | |
| **v.** | ' | **CRIMINAL NO. 16-53‑ \** |
| | ' | |
| **EDUARDO BETANCOURT** | ' | |
| **Defendant.** | ' | |

## PLEA AGREEMENT

The United States of America, by and through Andrew Weissmann, Chief of the Fraud Section of the U.S. Department of Justice ("Fraud Section"), Lorinda Laryea, Trial Attorney, and Patrick M. Pericak, Senior Trial Attorney, and Kenneth Magidson, United States Attorney for the Southern District of Texas, and John Pearson, Deputy Chief, and the defendant, EDUARDO BETANCOURT ("Defendant"), and Defendant's counsel, pursuant to Rules 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1. Defendant agrees to plead guilty to Count One of the information. Count One charges Defendant with conspiracy to commit wire fraud, contrary to Title 18, United States Code, Section 1343, in violation of Title 18, United States Code, Section 371. Defendant, by entering this plea, agrees that he is waiving any right

to have the facts that the law makes essential to the punishment either charged in the information, or proved to a jury or proven beyond a reasonable doubt.

### Punishment Range

2.   The **statutory** maximum penalty for each violation of Title 18, United States Code, Section 371, is imprisonment of not more than 5 years and a fine of not more than the greatest of: (1) $250,000; (2) twice the gross amount of any pecuniary gain that any persons derived from the offense; or (3) twice the gross amount of any loss sustained by any persons as a result of the offense.   Additionally, Defendant may receive a term of supervised release after imprisonment of up to three (3) years. *See* Title 18, United States Code, Sections 3559(a)(4) and 3583(b)(2).   Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his/her sentence, then Defendant may be imprisoned for the entire term of supervised release, without credit for time already served on the term of supervised release prior to such violation.   *See* Title 18, United Stated Code, Sections 3559(a)(4) and 3583(e)(3). Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

### Mandatory Special Assessment

3.    Pursuant to Title 18, United States Code, Section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction.   The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

### Immigration Consequences

4.    Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future.   Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty.

### Cooperation

5.    The parties understand this agreement carries the potential for a motion for departure under Section 5K1.1 of the Sentencing Guidelines.   Defendant understands and agrees that whether such a motion is filed will be determined solely

by the United States through the Chief of the Fraud Section and the United States Attorney for the Southern District of Texas.   Should Defendant's cooperation, in the sole judgment and discretion of the United States, amount to "substantial assistance," the United States reserves the sole right to file a motion for departure pursuant to Section 5K1.1 of the United States Sentencing Guidelines.   Defendant further agrees to persist in that plea through sentencing and fully cooperate with the United States.   Defendant understands and agrees that the United States will request that sentencing be deferred until that cooperation is complete.

6.   Defendant understands and agrees that "fully cooperate," as that term is used herein, includes providing all information relating to any criminal activity known to Defendant, including but not limited to foreign bribery, kickbacks, and fraud.   Defendant understands that such information includes both state and federal offenses arising therefrom.   In that regard:

(a)   Defendant agrees that this plea agreement binds only the Chief of the Fraud Section and United States Attorney for the Southern District of Texas and Defendant; it does not bind any other United States Attorney or any other unit of the Department of Justice;

(b)   Defendant agrees to testify truthfully as a witness before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States.   Defendant further agrees to waive his Fifth Amendment privilege against self-incrimination for the purpose of this agreement;

(c)     Defendant agrees to voluntarily attend any interviews and conferences as the United States may request;

(d)     Defendant agrees to provide truthful, complete and accurate information and testimony and understands any false statements made by the defendant to the Grand Jury or at any court proceeding (criminal or civil), or to a government agent or attorney, can and will be prosecuted under the appropriate perjury, false statement, or obstruction statutes;

(e)     Defendant agrees to provide to the United States all documents in his/her possession or under his control relating to all areas of inquiry and investigation; and

(f)     Should the recommended departure, if any, not meet Defendant's expectations, the Defendant understands that he remains bound by the terms of this agreement and cannot, for that reason alone, withdraw his/her plea.

## Waiver of Appeal and Collateral Review

7.  Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal the conviction and sentence imposed.  Defendant is also aware that Title 28, United States Code, Section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final.  Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United

States Code, Section 2255.   In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

8.   In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court.   Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his guilty plea, and is not binding on the United States, the Probation Office or the Court.   The United States does not make any promise or representation concerning what sentence the defendant will receive.   Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court.   *See United States v. Booker*, 543 U.S. 220 (2005).   Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

9.   Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

### The United States' Agreements

10.   The United States agrees to each of the following:

(a)      At the time of sentencing, the United States agrees not to oppose Defendant's anticipated request to the Court and the United States Probation Office that he receive a two (2) level downward adjustment pursuant to section 3E1.1(a) of the United States Sentencing Guidelines, should Defendant accept responsibility as contemplated by the Sentencing Guidelines; and

(b)      If Defendant qualifies for an adjustment under section 3E1.1(a) of the United States Sentencing Guidelines, the United States agrees not to oppose Defendant's request for an additional one-level departure based on the timeliness of the plea or the expeditious manner in which Defendant provided complete information regarding his/her role in the offense (if Defendant's offense level is 16 or greater).

### Agreement Binding – Fraud Section and Southern District of Texas Only

11.   The United States agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for offenses arising from conduct charged in the information.   This plea agreement binds only the Fraud Section and the United States Attorney's Office for the Southern District of Texas and Defendant.   It does not bind any other United States Attorney or any other unit of the Department of Justice.   The United States will bring this plea agreement and the

full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested.

## United States' Non-Waiver of Appeal

12.   The United States reserves the right to carry out its responsibilities under guidelines sentencing.   Specifically, the United States reserves the right:

> (a)    to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

> (b)    to set forth or dispute sentencing factors or facts material to sentencing;

> (c)    to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

> (d)    to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, section 3553(a); and

> (e)    to appeal the sentence imposed or the manner in which it was determined.

## Sentence Determination

13.   Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, Section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense

8

to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines.    Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

### Rights at Trial

14.    Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement.    Defendant understands that the rights of a defendant include the following:

(a)    If Defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel.    The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

(b)    At a trial, the United States would be required to present witnesses and other evidence against Defendant.    Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them.    In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf.    If the witnesses for Defendant would not appear

voluntarily, he could require their attendance through the subpoena power of the court; and

(c)     At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify.   However, if Defendant desired to do so, he could testify on his own behalf.

### Factual Basis for Guilty Plea

15.   Defendant is pleading guilty because he is in fact guilty of the charges contained in Count One of the information.   If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish Defendant's guilt:

Company was a Texas-based company that, among other things, manufactured and supplied products for the petroleum, oil, and gas industries. Company had domestic as well as international operations.   Company used third-party sales agents to promote and sell Company's products to customers outside the United States.   Company's Latin American operations were run by employees located in Houston, Texas.

Defendant was hired by Company in 2001 as an Account Manager in the Latin America sales group.   Defendant reported to co-conspirator Franklin Marsan ("Marsan"), who was Regional Manager for Latin America sales.   In May 2011,

after Marsan left Company, Defendant was promoted to Regional Manager for Latin America sales.

During Defendant's tenure at Company, Defendant's office was located in Houston, Texas, but Defendant worked with third-party sales agents who were located outside the United States.   These third-party sales agents helped promote and sell Company's products to companies and government entities in Latin America and the Caribbean.   The third-party sales agents were paid a commission on the sales of Company's products.

From at least 2008 and continuing until at least March 2011, on many of these sales, the third-party sales agents from several countries paid kickbacks to Defendant and Marsan from the commissions that the agents received as a result of the sales of Company's products.   Defendant and Marsan conspired and agreed to split the kickbacks that were paid by these third-party sales agents.   During the course of the scheme, Defendant and Marsan received a total of at least $150,000 in kickbacks from the third-party sales agents.   These payments were generally made in cash. Company did not know about these kickbacks, and Defendant and Marsan actively concealed these kickbacks from Company.

Defendant knew that the kickbacks, and his concealment of the kickbacks, were material to Company.   Had Company known of this conduct, it would have

terminated the contracts on which kickbacks were paid, terminated the relationships with the third-party agents, and fired both Marsan and Defendant.

As part of this scheme, Defendant and Marsan received kickbacks from Sales Agent A, who assisted in promoting and selling Company's products in Honduras, Panama, and El Salvador. Defendant, Marsan, and Sales Agent A discussed the kickback scheme in email communications, but used covert language to attempt to conceal the scheme. Defendant and Marsan sent these email communications from their office in Houston, Texas to Sales Agent A in Honduras. For example, on July 15, 2008, Sales Agent A sent an email message to Marsan with the Subject line, "Delete afterwards ok," in which he wrote: "Ok weather report received to perfection. Besides that 241 American gallons were also unloaded for you some time ago which would have to be distributed among the truck's three compartments." The phrase "three compartments" refers to Sales Agent A, Betancourt, and Marsan, and the communication refers to the fact that Sales Agent A was going to pay kickbacks to Defendant and Marsan from the commission that Sales Agent A received from Company.

Sales Agent A emailed Marsan again that same day asking for information about how Marsan "divvied up the pie [Marsan] took so [Sales Agent A] can take note." Marsan responded: "From the 9.5-step stairs I went up last weekend, I took

a spill on step 8.0 and luckily the EB was 'like at the ready' on his step 1.5 that I wouldn't break my neck.   Capisce??? . . . Dr. Spock also transported 1.5 of the 9.5 to Snow White (alias EB). . . . The CIA folk are gonna feel like DUMBASSES when they read these emails."   "EB" is a reference to the Defendant, EDUARDO BETANCOURT.   This email details the amount of the kickbacks that Sales Agent A was going to pay to Defendant and Marsan on this transaction from the commission that Sales Agent A received from Company.

Defendant and Marsan also received kickbacks from the sales of Company's products from Sales Agent B, who assisted in promoting and selling Company's products in Mexico.   Defendant, Marsan, and Sales Agent B also used covert language in email communications in an attempt to conceal the scheme.   Defendant and Marsan sent these email communications from their office in Houston, Texas to Sales Agent B in Mexico.   For example, in December 2010, Company sold products to a customer in Mexico, and Sales Agent B was to receive a commission and subcontracting fees on the sale.   On January 15, 2011, Individual A, who was working with Sales Agent B, sent an email to Betancourt, Marsan, and Sales Agent B with the Subject line, "Distribution of funds."   In the email, Individual A explained how much Defendant, Marsan, Sales Agent B, and Individual A were going to receive from the sale.

Subsequently, on January 24, 2011, Individual A sent an email to Marsan stating that she was going to deposit Defendant's and Marsan's share of the proceeds to a bank account at Bank A that she had on file for them.   Marsan replied the next day, asking her to "[p]lease send all the Mexican tequilas to the [Bank A] distillery," i.e., the bank account at Bank A referred to in the prior email.

Defendant and Marsan also received kickbacks from the sales of Company's products from Sales Agent C, who assisted in promoting and selling Company's products in Venezuela.

Company was unaware that Defendant and Marsan received these kickbacks from third-party sales agents, and Defendant and Marsan affirmatively concealed the kickback scheme from employees working in the accounting function of the Company, as well as other employees of the Company.   For example, on December 8, 2010, Marsan sent an email to Individual A and Sales Agent B in which he explained that he agreed with how they were going to divide the proceeds from the Mexico sale referenced above.   Marsan then asked Individual A and Sales Agent B to send him the information about the prices for the installation, and to copy on the email the Administrative Assistant for Latin America Sales at Company (who was responsible for various accounting functions related to sales and the payment of commissions to third-party sales agents), but "WITHOUT mentioning anything

14

about the 'Quartet,'" which was a term that Defendant, Marsan, Sales Agent B, and Individual A used to describe themselves in relation to the kickback scheme.

## Breach of Plea Agreement

16.   If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution.   Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against Defendant in any prosecution.

## Restitution and Fines – Generally

17.   This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he will make a full and complete disclosure of all assets over which he exercises direct or indirect control, or in which he has any financial interest.   Defendant agrees not to dispose of any assets or take

any action that would effect a transfer of property in which he has an interest, unless Defendant obtains the prior written permission of the United States.

18. Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) within 14 days of signing this plea agreement. Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

19. Defendant agrees to take all steps necessary to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, and signing any other documents necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of his assets to deliver all funds and records of such assets to the United States.

20. Defendant understands that restitution and fines are separate components of sentencing and are separate obligations.

### Restitution

21.   Defendant agrees to pay full restitution to the victim regardless of the count of conviction.   Defendant stipulates and agrees that as a result of his and Marsan's jointly undertaken criminal conduct, the victim incurred a monetary loss of at least $150,000.   Defendant understands and agrees that the Court will determine the amount of restitution to fully compensate the victim.   Defendant agrees that restitution imposed by the Court will be due and payable immediately and that Defendant will not attempt to avoid or delay payment.   Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, the restitution order imposed by the Court.

### Fines

27.   Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment.   Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

## Complete Agreement

28.   This written plea agreement, consisting of 21 pages, including the attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel.   No promises or representations have been made by the United States except as set forth in writing in this plea agreement.   Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

29.   Any modification of this plea agreement must be in writing and signed by all parties.

Filed at ~~Houston~~ , Texas, on February 26          ,
20_16_.

X _____
Defendant

Subscribed and sworn to before me on February 26          ,
20_16_.

DAVID J. BRADLEY, Clerk
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

18

APPROVED:

Andrew Weissmann
Chief, Fraud Section

By: _____

Lorinda Laryea
Trial Attorney
Telephone: 202-353-3439
Patrick M. Pericak
Senior Trial Attorney
Telephone: 202-305-4915


Kenneth Magidson
United States Attorney

By: _____          _____

John P. Pearson                                                George Murphy
Deputy Chief                                                     Attorney for Defendant
Telephone: 713-567-9342

19

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ' | |
| | ' | |
| **v.** | ' | **CRIMINAL NO.** |
| | ' | |
| **EDUARDO BETANCOURT,** | ' | |
| **Defendant.** | ' | |

### PLEA AGREEMENT – ADDENDUM

I have fully explained to Defendant his rights with respect to the pending information. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case.   I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction.   Further, I have carefully reviewed every part of this plea agreement with Defendant.   To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____          2/26/16
Attorney for Defendant                                Date

I have consulted with my attorney and fully understand all my rights with respect to the information pending against me.   My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case.   I have read and carefully reviewed every part of this plea agreement with my attorney.   I understand this agreement and I voluntarily agree to its terms.

_____        2/26/16
Defendant                               Date

21